James M. Wagstaffe (#95535)
Frank Busch (#258288)
**WAGSTAFFE, VON LOEWENFELDT,
BUSCH & RADWICK LLP**
100 Pine Street, Suite 725
San Francisco, California 94111
Telephone: (415) 357-8900
Facsimile: (415) 357-8910
wagstaffe@wvbrlaw.com
busch@wvbrlaw.com

*Proposed Liaison Counsel for the Class*

**LABATON SUCHAROW LLP**
Christopher J. Keller (*pro hac vice* forthcoming)
Eric J. Belfi (*pro hac vice* forthcoming)
Francis P. McConville (*pro hac vice* forthcoming)
David J. Schwartz (*pro hac vice* forthcoming)
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
ckeller@labaton.com
ebelfi@labaton.com
fmcconville@labaton.com
dschwartz@labaton.com

*Counsel for Proposed Lead Plaintiff
Walleye Opportunities Master Fund Ltd and
Walleye Manager Opportunities LLC and
Proposed Lead Counsel for the Class*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JAMES HILL, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SILVER LAKE GROUP, L.L.C., BC PARTNERS LLP, RAYMOND SVIDER, and JUSTIN BATEMAN,<br><br>Defendants. | Case No. 4:20-cv-02341-JSW<br><br>**CLASS ACTION**<br><br>**NOTICE OF MOTION AND MOTION OF WALLEYE OPPORTUNITIES MASTER FUND LTD AND WALLEYE MANAGER OPPORTUNITIES LLC FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF SELECTION OF LEAD COUNSEL; MEMORANDUM OF LAW IN SUPPORT THEREOF**<br><br>**Date:** July 17, 2020<br>**Time:** 9:00 a.m.<br>**Courtroom:** 5 – 2nd Floor<br>**Judge:** Jeffrey S. White |

*caption continues on following page*

| | |
|---|---|
| FNY PARTNERS FUND LP, FNY MANAGED ACCOUNTS LLC, and INFINITY CAPITAL MARKETS LIMITED, On Behalf of Themselves, and All Others Similarly Situated,<br><br>                Plaintiff,<br><br>    v.<br><br>BC PARTNERS LLP, SILVER LAKE GROUP, L.L.C., RAYMOND SVIDER, and JUSTIN BATEMAN,<br><br>                Defendants. | Case No. 3:20-cv-03741-RS |
| SAM RACHIMI, Individually and on Behalf of All Others Similarly Situated,<br><br>                Plaintiff,<br><br>    v.<br><br>SILVER LAKE GROUP, L.L.C., BC PARTNERS LLP, RAYMOND SVIDER, and JUSTIN BATEMAN,<br><br>                Defendants. | Case No. 4:20-cv-03766 |

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION ................................................................................................ 1

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................................... 1

I.  STATEMENT OF THE ISSUES TO BE DECIDED ........................................................ 1

II.  PRELIMINARY STATEMENT ........................................................................................ 2

III. FACTUAL BACKGROUND ............................................................................................. 3

IV. ARGUMENT ....................................................................................................................... 6

    A.  The Actions Should be Consolidated ..................................................................... 6

    B.  Walleye Should Be Appointed Lead Plaintiff ....................................................... 6

        1.  The PSLRA Standard for Appointing Lead Plaintiff ............................... 7

    C.  Walleye Is the "Most Adequate Plaintiff" ............................................................ 8

        1.  Walleye Satisfied the PSLRA's Procedural Requirements ...................... 8

        2.  Walleye Has the Largest Financial Interest in the Outcome of the Action ................................................................................................. 8

        3.  Walleye Satisfies Rule 23's Typicality and Adequacy Requirements ................................................................................................ 8

            (a)  Walleye's Claims Are Typical of Those of the Class ................... 9

            (b)  Walleye Will Fairly and Adequately Protect the Interests of the Class ................................................................................. 9

        4.  Walleye Is Precisely the Type of Lead Plaintiff Congress Envisioned When It Passed the PSLRA ................................................. 10

    D.  The Court Should Approve Walleye's Choice of Counsel ................................. 11

CONCLUSION ................................................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Cavanaugh*,
 306 F.3d 726 (9th Cir. 2002) ....................................................................................7, 8, 11

*In re Cohen v. United States District Court*,
 586 F.3d 703 (9th Cir. 2009) ..................................................................................................11

*Crihfield v. CytRx Corp.*,
 No. CV 16-05519 SJO, 2016 WL 10587938 (C.D. Cal. Oct. 26, 2016) ...................................6

*In re Critical Path, Inc. Sec. Litig.*,
 156 F. Supp. 2d 1102 (N.D. Cal. 2001) ...................................................................................11

*In re Enron Corp. Sec. Litig.*,
 206 F.R.D 427 (S.D. Tex. 2002).............................................................................................11

*Felix v. Symantec Corp.*,
 No. C 18-02902 WHA, 2018 WL 4029053 (N.D. Cal. Aug. 23, 2018) .............................9, 10

*Lloyd v. CVB Fin. Corp.*,
 No. CV 10-06256 MMM, 2011 WL 13128303 (C.D. Cal. Jan. 21, 2011)................................9

*Perlmutter v. Intuitive Surgical, Inc.*,
 No. 10-CV-03451-LHK, 2011 WL 566814 (N.D. Cal. Feb. 15, 2011)..............................10, 11

*Richardson v. TVIA, Inc.*,
 No. C 06 06304-RMW, 2007 WL 1129344 (N.D. Cal. Apr. 16, 2007) ...................................8

*Tanne v. Autobytel*,
 226 F.R.D. 659 (C.D. Cal. 2005) ..............................................................................................9

**Rules & Statutes**

Fed. R. Civ. P. 23................................................................................................................ *passim*

Fed. R. Civ. P. 42(a) ..........................................................................................................1, 6

15 U.S.C. 78u-4 *et seq.*. ................................................................................................ *passim*

**Docketed Cases**

*In re Am. Int'l Grp., Inc. Sec. Litig.*,
 No. 04-cv-8141 (S.D.N.Y.)....................................................................................................12

*In re Bear Stearns Cos., Inc. Sec., Derivative, & ERISA Litig.*,
 No. 08-md-1963 (S.D.N.Y.) ..................................................................................................12

*In re Broadcom Corp. Class Action Litig.*,
   No. 06-cv-05036 (C.D. Cal.) ..................................................................................................12

*In re Countrywide Fin. Corp. Sec. Litig.*,
   No. 07-cv-5295 (C.D. Cal.) ....................................................................................................12

*In re Mercury Interactive Corp. Sec. Litig.*,
   No. 05-cv-3395 (N.D. Cal.) ....................................................................................................12

*Walleye Trading LLC v. MINDBODY, Inc.*,
   No. 19-cv-08331(S.D.N.Y .......................................................................................................12

**Other Authorities**

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 ................................10

## NOTICE OF MOTION AND MOTION

**TO:    ALL PARTIES AND THEIR COUNSEL OF RECORD**

**PLEASE TAKE NOTICE** that Lead Plaintiff movant Walleye Opportunities Master Fund Ltd and Walleye Manager Opportunities LLC (together, "Walleye") by and through its counsel, hereby moves this Court in Courtroom 5 – 2nd Floor of the Honorable Jeffrey S. White at the United States District Court, Northern District of California, Oakland Courthouse, 1301 Clay Street, Oakland, California 94612, on July 17, 2020 at 9:00 a.m., or as soon thereafter as the matter may be heard, for the entry of an Order: (i) consolidating the above-captioned actions; (ii) appointing Walleye as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4, *et seq.*; (iii) approving the selection of Labaton Sucharow LLP ("Labaton Sucharow") as Lead Counsel for the Class and Wagstaffe, von Loewenfeldt, Busch & Radwick LLP ("WVBR") (the "Motion"); and (iv) granting such other and further relief as the Court may deem just and proper.

This Motion is made on the grounds that Walleye believes it is the "most adequate plaintiff" under the PSLRA, and should therefore be appointed Lead Plaintiff. Specifically, Walleye believes it has the "largest financial interest" in the relief sought by the Class in this litigation. Walleye also otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") because its claims are typical of other Class members' claims, and because it will fairly and adequately represent the Class.

This Motion is based upon the accompanying Memorandum of Law in support thereof, the Declaration of James M. Wagstaffe ("Wagstaffe Decl.") filed herewith, the pleadings and other filings herein, and such other written or oral argument as may be permitted by the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    STATEMENT OF THE ISSUES TO BE DECIDED

1. Whether the Court should consolidate the above-captioned actions pursuant to Rule 42(a) of the Federal Rules of Civil Procedure;

2. Whether the Court should appoint Walleye as Lead Plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B); and

3. Whether the Court should approve of Walleye's selection of Labaton Sucharow as Lead Counsel for the Class and WVBR as Liaison Counsel for the Class pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).

## II. PRELIMINARY STATEMENT

Presently pending before the Court is a securities class action arising from the unlawful use of material non-public information by BC Partners LLP ("BC Partners") and Silver Lake Group, L.L.C. (together, with its affiliates, including, but not limited to, SLP III Investment Holding S.à.r.l., Silver Lake Partners III, L.P., Silver Lake Technology Investors III, L.P., Silver Lake Technology Associates III, L.P., and SLTA III (GP), L.L.C., "Silver Lake"), who collectively gained over $185 million in profits and losses avoided through a November 6, 2019, block trade of 10 million shares of Intelsat S.A. ("Intelsat" or the "Company"), a Luxembourg based satellite operator that provides television and radio communications, to Plaintiff and other unsuspecting and unwitting public shareholders.

The action has been brought on behalf of all those investors who purchased or otherwise acquired Intelsat shares contemporaneously with Defendants' unlawful trades from November 5, 2019 through and including November 18, 2019 (the "Class Period"), pursuant to Sections 20A, 10(b), and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§78t-1, 78j(b), and 78t(a).

Under to the PSLRA, this Court is to appoint the "most adequate plaintiff" to serve as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(i). In that regard, the Court is required to determine which member of the Class has the "largest financial interest" in the relief sought in this litigation, and also whether that movant has made a *prima facie* showing that it is a typical and adequate Class representative under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Walleye respectfully submits that it should be appointed Lead Plaintiff because it has the "largest financial interest" in this litigation and has made the requisite showing of typicality and adequacy required by the standards of the PSLRA. As set forth in detail below, Walleye

incurred *$538,979.08* in losses as a result of its Class Period transactions in Intelsat shares.[1] In light of this significant loss, Walleye has a substantial financial interest in the relief sought by this litigation—an interest believed to be greater than that of any competing movant.

Walleye also meets the typicality and adequacy requirements of Rule 23 as required by the PSLRA, because its claims are typical of those of absent Class members, especially in light of Walleye's substantial and contemporaneous purchases on November 6, 2019, and because it will fairly and adequately represent the interests of the Class. Accordingly, Walleye is the "most adequate plaintiff" and should be appointed Lead Plaintiff. Walleye has also demonstrated its adequacy through its selection of Labaton Sucharow as Lead Counsel on behalf of the Class. Labaton Sucharow is a nationally recognized securities class action firm that has recovered billions of dollars for the benefit of injured investors, and has the expertise and resources necessary to handle litigation of this complexity and scale.

Accordingly, Walleye requests that the Court appoint him Lead Plaintiff and otherwise grant its Motion.

## III.   FACTUAL BACKGROUND

Since at least 2017, the Federal Communications Commission ("FCC") has explored ways to potentially free up various wavebands for future "5G" use. Of particular interest was the "C-Band," a range of mid-level bands that Intelsat and a few other satellite operators had rights to use in the United States.

Intelsat has since proposed numerous plans to clear hundreds of megahertz ("MHz") for 5G use in exchange for money. At first, Intelsat submitted a proposal with Intel Corporation ("Intel") calling for satellite operators to identify geographic areas across the country where they could clear the C-Band for terrestrial use. Then, Intelsat and SES, a fellow FSS (defined below)

---

[1] A Copy of the PSLRA-required Certification of Walleye, signed by Andrew Carney, as Chief Executive Officer of Walleye Trading Advisors LLC, is attached as Exhibit A to the accompanying Wagstaffe Decl., which sets forth all transactions for Walleye in Intelsat shares during the Class Period. In addition, a chart reflecting the calculation of Walleye's losses as a result of its Class Period transactions in Zoom securities is attached as Exhibit B to the Wagstaffe Decl.

operator in C-Band, announced their agreement to open a portion of C-Band spectrum to allow wireless operators to access 100 MHz of nationwide C-Band spectrum across the United States.

Eventually, Intelsat joined the C-Band Alliance ("CBA"), a consortium of other FSS providers that utilize the C-Band in the United States (SES, Eutelsat, and Telesat), to propose another plan for bringing the spectrum into use within 18-36 months from a FCC order.  Central terms of the CBA's proposal included undertaking a private sale process for the spectrum, requiring the CBA to cover the costs of both adding the necessary additional satellite capacity and repointing antennas where needed for both senders and receivers, earmarking all proceeds of the private sale to the members of the CBA, and freeing up 200 MHz of spectrum.

Analysts viewed the CBA proposal as "the most workable and timely solution," especially after the CBA amended its proposal to clear up an additional 100 MHz of C-Band spectrum within 36 months from a CBA-led auction.

Then, on November 18, 2019, the FCC rejected Intelsat's proposal.  Further, FCC Chairman Ajit Pai ("Chairman Pai") appeared to foreclose any future prospects, conveying his support for a public rather than private auction of the C-Band spectrum.  Posting on his Twitter account, Chairman Pai announced, "I'm confident they'll quickly conduct a public auction that will give everyone a fair chance to compete for this #5G spectrum, while preserving availability of the upper 200 MHz of the band for continued delivery of programming."

In response, the CBA issued a statement claiming that Chairman Pai's proposal failed to address "the critical involvement of the incumbent satellite operators in executing the complex task of reconfiguring and transitioning their networks."  Still, the CBA committed to "continue to work cooperatively with the FCC to develop an effective alternative plan."

The market's reaction to this news was quick and harsh.  Intelsat's stock fell over 40 percent on extremely heavy trading, closing down from $13.41 per share on November 15, 2019, to $8.03 per share on November 18, the next trading day.

As was later revealed, however, certain insider shareholders were able to sell a large chunk of Intelsat shares just before this massive stock plunge, capitalizing on their knowledge that Intelsat's proposals were viewed negatively by the FCC.  According to subsequent media

reports, including those published by *Bloomberg News* and the *New York Post*, for example, on November 5, 2019, Intelsat's Chief Executive Officer ("CEO"), Stephen Spengler ("Spengler"), met with the FCC's senior counsel, Nicholas Degani ("Degani"), to discuss Intelsat's plan to sell spectrum. Following this meeting, and with the messages conveyed from the FCC in tow, Intelsat submitted a revised proposal to the FCC on November 8, 2019, offering to give up more spectrum in exchange for money.

Notwithstanding Intelsat's rush to submit a revised proposal, on **November 6, 2019**, before notice of the meeting was even posted on the FCC's website (which occurred on November 8, 2019), Defendants appear to have sold a 10 million block of Intelsat's shares for about $24.60 per share. It was then revealed that the "$246 million block was shopped after markets closed on Nov. 5" with "no advance warning that the sale was coming," that pressure was placed on "interested buyers" who "were told they had an hour or so to decide[,]" and that Defendants BC Partners and Silver Lake appear to have been the sellers of those shares.

Both Defendants BC Partners and Silver Lake have long had significant control over the Company. For example, Intelsat was first acquired by a consortium of BC Partners and Silver Lake investors in February 2008. In December 2018, pursuant to a New Governance Agreement, which remains in effect today, BC Partners was given the right to "nominate (i) two directors for election to [Intelsat's] board of directors" as long as it maintains at least 25% of the Company's outstanding common shares; and "(ii) one director for election to [Intelsat's] board of directors" as long as it maintains at least 5%, but less than 25%, of the Company's outstanding stock. Further, BC Partners was afforded "Information Rights," which entitled it to receive "board meeting materials provided to each director." Likewise, BC Partners was a party to a New Shareholders Agreement, also executed in December 2018 and still in effect today, between Intelsat and Silver Lake, which afforded Silver Lake the right to "receive certain information required to meet internal and external reporting or other legal/compliance obligations."

The action therefore alleges that BC Partners and Silver Lake knew, or were reckless in not knowing, that they were prohibited from trading based on this confidential market-moving information, but traded anyway, disposing to Plaintiff and other members of the Class (defined

1  below) their Intelsat stock before this news was announced and the Company's shares
2  plummeted.
3        As a result, Walleye and the Class have been damaged from Defendants' alleged
4  violations of the U.S. securities laws.

5  **IV.   ARGUMENT**
6      **A.   The Actions Should be Consolidated**
7        Rule 42(a) of the Federal Rules of Civil Procedure ("Rule 42(a)") states that "'[i]f actions
8  before the court involve a common question of law or fact, the court may: (1) join for hearing or
9  trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other
10 orders to avoid unnecessary cost or delay.'" *Crihfield v. CytRx Corp*., No. CV 16-05519 SJO
11 (SKx), 2016 WL 10587938, at *2 (C.D. Cal. Oct. 26, 2016).  The PSLRA contemplates
12 consolidation where "more than one action on behalf of a class asserting substantially the same
13 claim or claims arising under this chapter has been filed." 15 U.S.C. 78u-4(a)(3)(B)(ii).  As
14 such, the PSLRA does not displace the traditional legal standards for consolidation under Rule
15 42(a).
16       Consolidation of the above-captioned actions is proper where, as here, the actions involve
17 common questions of law and fact such that consolidation would prevent unnecessary cost or
18 delay in adjudication.  Each of the actions has been filed in this District alleging similar factual
19 and legal grounds to support allegations of violations of Sections 10(b), 20(a), and 20A of the
20 Exchange Act arising from Defendants allegedly unlawful insider trading.  Accordingly, the
21 actions should be consolidated pursuant to Rule 42(a) for all purposes.

22     **B.   Walleye Should Be Appointed Lead Plaintiff**
23       Walleye respectfully submits that it is the presumptively "most adequate plaintiff"
24 because it has complied with the PSLRA procedural requirements, holds the largest financial
25 interest of any qualified movant, and otherwise satisfies Rule 23's typicality and adequacy
26 requirements.
27
28

### 1. The PSLRA Standard for Appointing Lead Plaintiff

The PSLRA provides a straightforward, sequential procedure for selecting lead plaintiff for "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." *See* 15 U.S.C. § 78u-4(a)(l); *see also* 15 U.S.C. § 78u-4(a)(3)(B). First, Section 21D(a)(3)(A)(i) of the Exchange Act, as amended by the PSLRA, specifies that:

> Not later than 20 days after the date on which the complaint is filed, the plaintiff or plaintiffs shall cause to be published, in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported plaintiff class --
>
> (I)     of the pendency of the action, the claims asserted therein, and the purported class period; and
>
> (II)     that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the court to serve as lead plaintiff of the purported class.

15 U.S.C. § 78u-4(a)(3)(A)(i).

Next, under the PSLRA, a court is to consider any motion made by class members and appoint the movant that the court determines to be most capable of adequately representing the interests of the class as lead plaintiff. Specifically, the PSLRA provides that a court:

> shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (. . . the "most adequate plaintiff") . . . .

15 U.S.C. § 78u-4(a)(3)(B)(i).

In adjudicating a lead plaintiff motion, a court shall adopt a presumption that the "most adequate plaintiff" is the person who: (i) filed a complaint or made a motion to serve as lead plaintiff; (ii) has the largest financial interest in the relief sought by the class; and (iii) otherwise satisfies the requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002) (discussing three-step competitive process for selecting a lead plaintiff). This presumption "'may be rebutted only upon proof . . . that the presumptively most adequate plaintiff [ ] will not fairly and adequately protect the interests of the class'" or "is subject to unique defenses that render such plaintiff incapable of adequately

representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II); *see also Cavanaugh*, 306 F.3d at 730.

### C. Walleye Is the "Most Adequate Plaintiff"

#### 1. Walleye Satisfied the PSLRA's Procedural Requirements

Walleye filed this motion to serve as Lead Plaintiff in a timely manner. Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), on April 7, 2020, counsel for the Plaintiff in the action caused notice regarding the pending nature of this case to be published on *Business Wire* a widely circulated, national, business-oriented news reporting service. *See* Notice, Wagstaffe Decl. Ex. C. Thus, as permitted by the PSLRA, any person or group of persons may apply to be appointed Lead Plaintiff within sixty (60) days after publication of the notice, *i.e.*, on or before June 8, 2020. Walleye filed its motion within the required period.

#### 2. Walleye Has the Largest Financial Interest in the Outcome of the Action

The PSLRA instructs the Court to adopt a rebuttable presumption that the "most adequate plaintiff" for lead plaintiff purposes is the movant with "the largest financial interest in the relief sought by the class," so long as the movant "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also Richardson v. TVIA, Inc.*, No. C 06 06304-RMW, 2007 WL 1129344, at *2 (N.D. Cal. Apr. 16, 2007) (discussing the PSLRA's lead plaintiff appointment process).

During the Class Period, Walleye suffered substantial losses of ***$538,979.08*** as a result of its transactions in Intelsat shares. *See* Loss Analysis, Wagstaffe Decl. Ex. B. Walleye is presently unaware of any other movant with a larger financial interest in the outcome of the Action. Consequently, and because Walleye also satisfies Rule 23's typicality and adequacy requirements, Walleye is entitled to the legal presumption that it is the most adequate plaintiff.

#### 3. Walleye Satisfies Rule 23's Typicality and Adequacy Requirements

In addition to possessing the largest financial interest in the outcome of the litigation, Walleye satisfies the applicable requirements of Rule 23. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). With respect to class certification, Rule 23(a) requires that: (i) the class is

so numerous that joinder of all members is impracticable; ii) there are questions of law or fact common to the class; (iii) such claims are typical of those of the class; and (iv) the representative will fairly and adequately protect the interests of the class. *See* Fed. R. Civ. P. 23(a). However, at the lead-plaintiff-selection stage, all that is required is a preliminary showing that the lead plaintiff's claims are typical and adequate. *See, e.g.*,*Tanne v. Autobytel*, 226 F.R.D. 659, 667 (C.D. Cal. 2005) (noting that a "preliminary showing" of typicality and adequacy is all that is necessary at the lead plaintiff stage).

### (a) Walleye's Claims Are Typical of Those of the Class

"The typicality requirement is satisfied when the putative lead plaintiff has suffered the same injuries as absent class members as a result of the same conduct by the defendants." *Felix v. Symantec Corp.*, No. C 18-02902 WHA, 2018 WL 4029053, at *3 (N.D. Cal. Aug. 23, 2018) (citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). The claims need not be "substantially identical" to support a finding of typicality. *Lloyd v. CVB Fin. Corp.*, No. CV 10-06256 MMM (PJWx), 2011 WL 13128303, at *5 (C.D. Cal. Jan. 21, 2011) (citation omitted).

Here, the claims that Walleye asserts are typical of the claims of the other members of the putative Class because, like all other Class members, Walleye: (i) purchased Intelsat shares during the Class Period and on the same day as the allegedly unlawful insider trades; (ii) was adversely affected by Defendants' alleged violations of the federal securities laws; and (iii) suffered damages as a result thereof. Because the claims that Walleye asserts are based on the same legal theories and arise "from the same event or practice or course of conduct that gives rise to the claims of other class members," typicality is satisfied. *See Newberg*, *et al.*, NEWBERG ON CLASS ACTIONS, §3:13 (4th ed. 2002). Thus, Walleye satisfies the typicality requirement.

### (b) Walleye Will Fairly and Adequately Protect the Interests of the Class

Walleye will fairly and adequately represent the interests of the proposed Class. Under Rule 23(a)(4), a representative party must "fairly and adequately protect the interests of the Class." Fed. R. Civ. P. 23(a)(4). The thrust of the adequacy inquiry is: "(1) whether there are conflicts within the class; and (2) whether plaintiff and counsel will vigorously fulfill their duties

to the class." *Symantec Corp.*, 2018 WL 4029053, at *3 (citing *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011)).

Here, no antagonism exists between Walleye's interests and those of the absent Class members; rather, the interests of Walleye and Class members are squarely aligned. In addition, Walleye has demonstrated its adequacy through its selection of Labaton Sucharow as Lead Counsel to represent the Class in this action. As discussed more fully below, Labaton Sucharow is highly experienced in prosecuting securities class actions vigorously and efficiently, and timely submitted its choice to the Court for approval, in accordance with the PSLRA. *See* 15 U.S.C. §§ 78u-4(a)(3)(A)(i)(II) and (B)(v). Finally, as a sophisticated institutional investor, Walleye is well-versed in the oversight of counsel. Accordingly, because Walleye is highly incentivized and capable to diligently oversee counsel and maximize recovery for the Class, it satisfies the adequacy requirement.

### 4. Walleye Is Precisely the Type of Lead Plaintiff Congress Envisioned When It Passed the PSLRA

In addition to satisfying the requirements of Rule 23, Walleye—a sophisticated institutional investor—is precisely the type of investor Congress envisioned, through the enactment of the PSLRA, to encourage to assume a more prominent role in securities litigation. *See* H.R. Conf. Rep. No. 104-369, at 34 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 733 ("The Conference Committee believes that increasing the role of institutional investors in class actions will ultimately benefit shareholders and assist courts by improving the quality of representation in securities class actions."). Congress reasoned that increasing the role of institutional investors, which typically have a large financial stake in the outcome of the litigation, would be beneficial because institutional investors with a large financial stake are more apt to effectively manage complex securities litigation. *See id.* at 34-35, *reprinted in* 1995 U.S.C.C.A.N. at 733-34.

To this end, many courts, including courts in this District, have recognized that the legislative history reflects a clear preference for institutional investors to be appointed as lead plaintiff in securities class actions. *See Perlmutter v. Intuitive Surgical, Inc.*, No. 10-CV-03451-LHK, 2011 WL 566814, at *13 (N.D. Cal. Feb. 15, 2011) ("appoint[ing] an institutional investor,

1  . . . comports with the PSLRA's goal to increase the likelihood that institutional investors would
2  serve as lead plaintiffs"); *In re Critical Path, Inc. Sec. Litig.,* 156 F. Supp. 2d 1102, 1109 (N.D.
3  Cal. 2001) ("[W]hile it may be true that losing a high percentage of one's net worth due to an
4  alleged fraud contributes to one's desire to prosecute a lawsuit against the wrongdoer, that desire
5  is no substitute for the experience and resources of an institutional investor with, presumably, an
6  in-house legal team and experience in the securities business.").

7  Here, Walleye is well suited to fulfill this Congressional intent.  There can be no doubt
8  that Walleye has the resources and institutional sophistication required to effectively manage and
9  supervise complex securities class actions against multibillion dollar companies.  *See In re Enron*
10 *Corp. Sec. Litig.*, 206 F.R.D 427, 457 (S.D. Tex. 2002) (rejecting a motion to be appointed
11 as lead plaintiff filed by an investor with "fractured attention and resources" because
12 the *Enron* "litigation [was] probably the largest and most complex of its kind in the history of
13 this country and . . . will demand the full focus of Lead Plaintiff(s) and Lead Counsel").
14 Accordingly, Walleye has the sophistication and resources necessary to effectively
15 litigate this matter and supervise Class counsel.

16  **D.     The Court Should Approve Walleye's Choice of Counsel**

17  The PSLRA vests authority in the lead plaintiff to select and retain lead counsel for the
18 class, subject to the court's approval.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  As such, this Court
19 should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests
20 of the class."  15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa); *see also In re Cohen v. United States*
21 *District Court*, 586 F.3d 703, 712 (9th Cir. 2009) ("[I]f the lead plaintiff has made a reasonable
22 choice of counsel, the district court should generally defer to that choice.") (citing *In re Cendant*
23 *Corp. Litig.*, 264 F.3d 201, 276 (3d Cir. 2001)); *see also Cavanaugh*, 306 F.3d at 734 ("Selecting
24 a lawyer in whom a litigant has confidence is an important client prerogative and we will not
25 lightly infer that Congress meant to take away this prerogative from securities plaintiffs.  And,
26 indeed, it did not.  While the appointment of counsel is made subject to the approval of the court,
27 the Reform Act clearly leaves the choice of class counsel in the hands of the lead plaintiff.").
28

1     Here, Walleye has selected Labaton Sucharow, highly-qualified counsel, to serve as Lead
2 Counsel for the proposed Class.  Walleye's selection of Labaton Sucharow is based, in part, on
3 Walleye Opportunities Master Fund Ltd.'s current service as lead plaintiff with Labaton
4 Sucharow as lead counsel in the case captioned *Walleye Trading LLC v. MINDBODY, Inc.*, No.
5 19-cv-08331(S.D.N.Y.).

6     Moreover, Labaton Sucharow has significant experience in prosecuting securities class
7 actions and has excelled as lead counsel in numerous landmark securities class actions
8 throughout the United States on behalf of defrauded investors.  Labaton Sucharow served as a
9 lead counsel in *In re American International Group, Inc. Securities Litigation*, No. 04-cv-8141
10 (S.D.N.Y.), in which it achieved a recovery totaling more than $1 billion for injured investors,
11 secured a $294.9 million recovery in *In re Bear Stearns Cos., Inc. Securities, Derivative, &*
12 *ERISA Litigation*, No. 08-md-1963 (S.D.N.Y.), in which it served as co-lead counsel, and
13 secured a $117.5 million settlement in *In re Mercury Interactive Corp. Securities Litigation*, No.
14 05-cv-3395 (N.D. Cal.).  In addition, Labaton Sucharow was a lead counsel in *In re Countrywide*
15 *Financial Corp. Securities Litigation*, No. 07-cv-5295 (C.D. Cal.), which achieved a settlement
16 of $624 million—one of the largest securities fraud settlements arising from the financial crisis
17 of 2007 and 2008, and also secured a $160.5 million settlement as lead counsel in *In re*
18 *Broadcom Corp. Class Action Litigation*, No. 06-cv-05036 (C.D. Cal.).  Labaton Sucharow
19 presently serves as lead and co-lead counsel in several significant investor class actions.  *See*
20 Wagstaffe Decl., Ex. D.

21     Likewise, WVBR is well qualified to represent the Class as Liaison Counsel.  WVBR
22 maintains an office in San Francisco, California, and James M. Wagstaffe has substantial
23 litigation experience in this court.  *See* Wagstaffe Decl., Ex. E.  Thus, the firm is well qualified to
24 represent the Class as Liaison Counsel.  *See* MANUAL FOR COMPLEX LITIGATION (Fourth) §
25 10.221 (2004) (discussing role of liaison counsel and noting that "[l]iaison counsel will usually
26 have offices in the same locality as the court").

27     Thus, the Court may be assured that by granting this motion and approving Walleye's
28 selection of counsel, the Class will receive the highest caliber of legal representation.

## CONCLUSION

For the foregoing reasons, Walleye respectfully requests that the Court: (i) consolidate the above-captioned actions; (ii) appoint Walleye as Lead Plaintiff; (iii) approve its selection of Labaton Sucharow as Lead Counsel for the Class and WVBR as Liaison Counsel for the Class; and (iv) grant such other and further relief as the Court may deem just and proper.

DATED:  June 8, 2020                         Respectfully submitted,

/s/ James M. Wagstaffe

James M. Wagstaffe (#95535)
Frank Busch (#258288)
**WAGSTAFFE, VON LOEWENFELDT, BUSCH & RADWICK, LLP**
100 Pine Street, Suite 725
San Francisco, California 94111
Telephone: (415) 357-8900
Facsimile: (415) 357-8910
wagstaffe@wvbrlaw.com
busch@wvbrlaw.com

*Proposed Liaison Counsel for the Class*

**LABATON SUCHAROW LLP**
Christopher J. Keller (*pro hac vice* forthcoming)
Eric J. Belfi (*pro hac vice* forthcoming)
Francis P. McConville (*pro hac vice* forthcoming)
David J. Schwartz (*pro hac vice* forthcoming)
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
ckeller@labaton.com
ebelfi@labaton.com
fmcconville@labaton.com
fmcconville@labaton.com
dschwartz@labaton.com

*Counsel for Proposed Lead Plaintiff Walleye Opportunities Master Fund Ltd and Walleye Manager Opportunities LLC and Proposed Lead Counsel for the Class*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 8, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

/s/ *James M. Wagstaffe*
James M. Wagstaffe